

# IN THE
# TENTH COURT OF APPEALS

## No. 10-18-00328-CR

**BROCK CORDEL CUERINGTON,**

                                 **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                 **Appellee**

### From the 361st District Court
### Brazos County, Texas
### Trial Court No. 14-01969-CRF-361

## MEMORANDUM OPINION

A jury convicted Brock Cuerington of assault family violence with a previous conviction and assessed his punishment at five years' imprisonment and a $5,000 fine. This appeal ensued. In his sole issue, Cuerington contends that the evidence is insufficient to support his conviction. More specifically, Cuerington argues that there is a lack of evidence to prove that the alleged victim in this case, Chastity, suffered bodily injury. We will affirm.

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.
>
> We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law

as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

A person commits the offense of assault if he "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." TEX. PENAL CODE ANN. § 22.01(a)(1). The assault becomes a third-degree felony if it is committed against someone who is a member of the defendant's family, a member of the defendant's household, or a person with whom the defendant has or has had a dating relationship and if the defendant has a previous conviction for family violence. *See id.* § 22.01(b)(2)(A). The manner and means allegations are not essential elements of the offense and therefore need not be included in the hypothetically correct jury charge. *See Thomas v. State*, 303 S.W.3d 331, 333 (Tex. App.—El Paso 2009, no pet.); *Rodriguez v. State*, 274 S.W.3d 760, 767 (Tex. App.—San Antonio 2008, no pet.).

"Bodily injury" is broadly defined as "physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(a)(8). "This definition encompasses even relatively minor physical contact if it constitutes more than offensive touching." *Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009). "Any physical pain, however minor, will suffice to establish bodily injury." *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012).

Testimony that a victim experienced physical pain is not required to prove bodily injury. *Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.). Instead, "[a] fact finder may infer that a victim actually felt or suffered physical pain because

people of common intelligence understand pain and some of the natural causes of it." *Garcia*, 367 S.W.3d at 688.  A fact finder may infer that a victim experienced physical pain from evidence of a cut, bruise, or other visible injury.  *Bin Fang v. State*, 544 S.W.3d 923, 928 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Arzaga*, 86 S.W.3d at 778; *see Shah v. State*, 403 S.W.3d 29, 34-35 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (holding trial court could reasonably infer that lesion on bridge of victim's nose would cause physical pain).

The relevant evidence presented in this case is as follows:  Laura Gill, Cuerington's aunt, testified that she was watching television in her bedroom one evening when she heard crying.  Gill went to find out what was happening and found Chastity crying in the bathroom and Cuerington standing in the doorway to the bathroom.  Cuerington and Chastity had been in a long-term relationship at that time, a relationship that involved some domestic violence.

Gill testified that Chastity told her at that time that Cuerington had "snatched her out [of] the tub and was accusing her of some guy being in the house."  Gill thus started to go retrieve the home phone and told Cuerington that she would call 9-1-1 if he did not stop.  Gill then discovered that Chastity already had possession of the home phone.  Gill testified that Cuerington tried to take the phone from Chastity.  When Chastity did not let go of the phone, Cuerington "kind of smooshed her upside the head."  Chastity reacted by hitting Cuerington with the phone, which made Cuerington even madder. Cuerington thus turned around and grabbed Chastity by her hair. Gill testified:  "And [Cuerington] pulls her head down and he's trying to kick her [in the face], but she's too

close for his feet to reach, you know. So I think the bruise was from his knee maybe. I don't know." Gill acknowledged at trial that she saw a bruise on Chastity's face later that evening when the police were talking to Chastity.

Gill testified that she finally retrieved her cell phone and called 9-1-1. When asked if Cuerington continued assaulting Chastity when Gill had turned her back, Gill replied: "I don't really - - I really can't say. I just know she's still crying and he's still angry. So when I do turn around, yeah, he's going at her and I try to tell him not to do it again." Gill testified that as she was coming back down the hallway after retrieving her cell phone, she also saw Chastity standing in between the dining room table and the loveseat when Cuerington reached over the loveseat, grabbed Chastity by her hair, and pulled her over the loveseat.

The 9-1-1 operator testified that she received a 9-1-1 call from an upset and scared Laura Gill, who told her that she needed help because Cuerington was assaulting someone. Gill told the 9-1-1 operator that Cuerington had kicked the "girl" in the face and that the girl was bleeding from the mouth. The 9-1-1 operator testified that she could hear "a female screaming and wailing" in the background and a male's voice that sounded agitated.

A paramedic who responded to the scene that evening testified that when he arrived, Chastity was sitting on the couch in the living room, crying and upset. The paramedic testified that Chastity told him that her eye hurt but that she was "fine." Chastity then told him "that her boyfriend pushed her down and kicked her in the face impacting her left eye area." When asked if Chastity told him what level of pain she was

in, the paramedic replied, "Yes. She said at a 10 out of 10 to the globe area around the eye more than the actual eye itself." The paramedic stated that he did not see any visible injuries at that time; however, he acknowledged that someone can be harmed without having visible injuries and that swelling and bruising can take some time to become visible.

Bryan Police Officer Greg Falcon testified that when he arrived at the scene, he also spoke with a crying and upset Chastity. Officer Falcon stated that Chastity told him the following: Cuerington had accused her of cheating, she had denied it, and he had gotten angry. She was then going to take a bath when Cuerington forced her to the ground. Cuerington attempted to spread her legs, but she was able to get away from him and go to the kitchen. Cuerington then grabbed her by the hair and pulled her to the ground. Chastity tried to call her mother, but Cuerington grabbed the phone away from her. Cuerington then grabbed a bottle of vinegar and started hitting her in the back with it. Although she was able to get away from Cuerington again, he then grabbed her by the hair, got her on the ground, and continued to assault her.

Officer Falcon testified that during his investigation, he learned that Cuerington had kicked Chastity in the face, punched her, injured her lip, and hit her in the back with the vinegar bottle. Officer Falcon took photos of Chastity that evening, which were admitted as evidence. Officer Falcon explained at trial that he was able to see some red marks on Chastity's forehead that evening that appeared to be a shoe pattern. While taking photos that evening, Officer Falcon also discovered a bite mark on Chastity's back. Chastity told him that it had happened a week earlier and that Cuerington had caused it.

Officer Falcon testified that it looked "fairly fresh. It wasn't bleeding, but it looked like it had started to heal."

Cuerington testified on his own behalf. He stated that he thought Chastity was cheating on him that evening. He asked to see her cell phone and then eventually tried to grab it. At that point, they started "tussling." He was trying to get her cell phone, and she was trying to keep it. Cuerington stated that when they were tussling for the cell phone, Chastity probably got scratched from his nails, but he denied punching, hitting, kicking, or biting her. He said that Chastity bit his knee at one point and he jerked, which caused his aunt to think that he had kicked Chastity, but he had not. He did eventually get the cell phone from Chastity and broke it. Cuerington testified that Chastity was screaming and upset because he had broken her phone.

Cuerington argues that the foregoing evidence is insufficient to prove that Chastity suffered bodily injury because Chastity did not testify and because the evidence is otherwise conflicting on the issue. Cuerington points, for example, to the fact that there was some evidence of redness on Chastity's forehead but that the paramedic testified that he saw no visible injuries on Chastity. The jury, however, is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). And furthermore, because the resolution of conflicts in the evidence is within the province of the jury, we are to defer to the jury's resolution of such conflicts. *See id.*; *see also Jackson*, 443 U.S. at 326, 99 S.Ct. at 2792-93; *Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008); *Render v. State*, 316 S.W.3d 846, 859 (Tex. App.—Dallas 2010, pet. ref'd)

("An appellate court must give deference to a jury's decision regarding what weight to give contradictory testimonial evidence because the decision is most likely based on an evaluation of credibility and demeanor, which the jury is in a better position to judge."). Here, by finding Cuerington guilty, the jury obviously believed the evidence supporting a finding that Chastity suffered bodily injury, such as Gill's acknowledgement that she saw a bruise on Chastity's face that evening and the paramedic's testimony that Chastity told him after the incident that her eye hurt. *See Bin Fang*, 544 S.W.3d at 928.

Viewing all of the evidence in the light most favorable to the verdict, we therefore conclude that a rational trier of fact could have found that Cuerington committed the offense of family violence assault with a previous conviction beyond a reasonable doubt. We thus overrule Cuerington's sole issue and affirm the trial court's judgment.

MATT JOHNSON
Justice

Before Chief Justice Gray,
    Justice Neill, and
    Justice Johnson
Affirmed
Opinion delivered and filed February 24, 2021
Do not publish
[CR25]

